| | | |
|---|---|---|
| **MARK R. RIX,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **No. 2:10-cv-484-JHR** |
| | ) | |
| **DOROTHY NORMAND,** | ) | |
| | ) | |
| **Defendant** | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]

On September 29, 2011, I presided over a bench trial in this case limited to the question of the damages sustained by the plaintiff as a result of a December 3, 2007, motor vehicle accident in Newington, New Hampshire ("Accident"), the defendant having stipulated that her negligence caused the Accident. *See* Joint Exhibit on Stipulations ("Stipulations"), Plaintiff's Exh. 13, ¶ 1. The plaintiff, Mark R. Rix, and his wife, Debra L. Rix, testified at the hearing. The plaintiff also presented the videotaped testimony of Minh T. Tran, D.O., one of his treating physicians. The plaintiff offered 13 exhibits, all of which were admitted without objection. I also granted, without objection, a post-trial motion by the plaintiff to add two exhibits, a DVD of the Tran deposition and a transcript of that deposition. *See* Docket Nos. 29, 30. Finally, I permitted the parties the opportunity, following the trial, to submit proposed findings of fact and conclusions of law, and they did so. *See* Proposed Findings of Fact and Conclusions of Law of Defendant Dorothy Normand ("Defendant's Proposed Findings") (Docket No. 27); Plaintiff's Proposed Findings of Fact [and] Conclusions of Law ("Plaintiff's Proposed Findings") (Docket No. 28). With the benefit of the trial testimony and exhibits, as well as the parties' post-trial

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to have me conduct all proceedings in this case, including trial, and to order the entry of judgment.

briefing, I conclude for the reasons that follow that the plaintiff should be awarded a total of $46,967 in damages.

## I.  Findings of Fact

1.      The plaintiff, born on September 10, 1960, is a full-time, active-duty master sergeant in the United States Air Force National Guard, stationed at Pease Air Force Base ("Pease") in New Hampshire.  Testimony of Mark R. Rix ("M. Rix Test."); Plaintiff's Exh. 1 (note of Paul Harry Abbott, P.A., dated 12/4/07) (setting forth plaintiff's date of birth).

2.      The plaintiff served in the Air Force from 1978 until 1987 and was thereafter employed in the private sector as a residential heating technician until 2002. M. Rix Test.  From 1992 to 2002, while employed in the private sector, he held a part-time Air National Guard position.  *Id*.  He became a full-time, active-duty Air National Guardsman in 2002.  *Id*.

3.      At Pease, the plaintiff performs preventive maintenance on aviation fuel systems, hands-on fuel system mechanical and service work, some administrative work, supervision of snowplowing, and actual snowplowing.  *Id*.  He typically works from 6:30 a.m. to 4 p.m. Monday through Friday, which earns him an extra day off every other week.  *Id*.  However, the demands of snow removal can increase his hours to as much as 12 hours a day or even 80 hours a week.  *Id*.; Plaintiff's Exh. 10 (Physical Therapy Initial Evaluation of Frances Lipe, PT, dated 12/8/10).

4.      The plaintiff also serves as a squadron fitness monitor at Pease.  M. Rix Test.  Just prior to the Accident, he routinely engaged in a weight training exercise program and did some running.  *Id*.  He was in good physical shape.  *Id*.

5.      The plaintiff resides with his wife, Debra L. Rix, in Acton, Maine.  *Id*.  The couple has three grown daughters.  *Id*.  The couple's home fronts Loon Lake, and they are active

people who enjoy kayaking, hiking, and backpacking. *Id.*; Testimony of Debra L. Rix ("D. Rix Test.").

6. On December 3, 2007, at approximately 10 a.m., the plaintiff was making a left-hand turn from Pease Boulevard in Newington, New Hampshire, heading east onto the entrance ramp of the Spaulding Turnpike, when his Toyota Echo was struck on the passenger side by the defendant's SUV after the defendant ran a red light. *Id.*; Plaintiff's Exh. 3 (Portsmouth Regional Hospital Emergency Department Report dated 12/3/07 ("E.D. Report")).

7. The "T-bone" impact was sufficient to push the plaintiff's car about 10 to 15 feet toward the curb and dislodge the passenger door, glove compartment, and dashboard. M. Rix Test. The Toyota was totaled. *Id.*

8. The plaintiff did not experience any loss of consciousness as a result of the accident, felt no pain on impact, and was able to exit his vehicle unassisted. *Id.*

9. The plaintiff was taken by ambulance to the emergency room of the Portsmouth Regional Hospital. Plaintiff's Exh. 2 (Newington Fire Department Prehospital Care Report dated 12/3/07). He initially denied pain/injury to emergency medical technicians, then reported tenderness in the back of his neck. *Id.*

10. When the plaintiff was seen in the emergency room at approximately 10:40 a.m., he complained of injury to his neck and mid-back, mild pain, and soreness in his lower neck and right mid-back. Plaintiff's Exh. 3 (E.D. Report) at 1. He had developed soreness *en route* to the hospital, and so was placed in a collar by emergency medical technicians. *Id.* X-rays of the plaintiff's cervical spine were negative. *Id.* at 2. He was discharged home with instructions to apply ice, avoid strenuous activity for a couple of days, and not work the remainder of that day.

*Id*. at 2, 5.  He also was given a prescription for 600 mg Ibuprofen tablets.  *Id*. at 3.  He reported his pain on departure as a 1 on a scale of 1 to 10.  *Id*. at 4.

11.     The following day, the plaintiff went to the Naval Branch Health Clinic ("Naval Clinic"), which served as his primary care physician.  M. Rix Test.; Plaintiff's Exh. 1 (note of Abbott dated 12/4/07).  He told Paul Harry Abbott, P.A., that the Accident had "resulted in left sided posterior neck pain and right sided upper to mid back pain."  Plaintiff's Exh. 1 (note of Abbott dated 12/4/07).  He complained of neck pain radiating to the left shoulder, neck muscle tightness on the left, muscle spasms in the neck, sudden upper back pain with muscle spasm on the right side, and mid-back pain on the right, starting suddenly, with muscle spasm on the right side.  *Id*.  He reported no lower back pain.  *Id*.  Abbott found tenderness on palpation of the shoulders and cervical spine, with no weakness or diminishment of range of motion of the cervical spine, and no tenderness on palpation of the thoracic (mid-back) or lumbar (lower back) spine.  *Id*.  He released the plaintiff to light-duty work, with follow-up as needed.  *Id*.  He also referred the plaintiff to Orthopedic & Sport Therapy Services ("OSTS"), where the plaintiff was first seen on December 6, 2007, by Katie Lamoureux, P.T.  *See* Plaintiff's Exh. 5 (Initial Evaluation of Lamoureux dated 12/6/07).

12.     On December 4, 2007, the plaintiff, on his own volition, also sought care with chiropractor Paul E. Newton, D.C.  M. Rix Test.; Plaintiff's Exh. 4 (Initial Exam of Dr. Newton dated 12/4/07).  During that initial visit, he reported pain of 2 on a scale of 1 to 10 in his neck, pain of 3 in his mid-back, and pain of 3 in his lower back, all commencing on December 3, 2007.  Plaintiff's Exh. 4 (Initial Exam of Dr. Newton dated 12/4/07).  He described his neck pain as occurring in the left posterior region, constant, aching, and superficial, with stiffness and tingling, his mid-back pain as constant, sharp, and superficial, with stiffness, and his lower back

pain as occurring on the right side, constant and superficial, with tightness. *Id*. Dr. Newton found some mild decreases of range of motion in the cervical spine and no range of motion deficits in the lumbar spine. *Id*. On palpation, he found tenderness, increased muscle tone, and myofascial trigger points in the cervical spine, increased muscle tone/spasm and tenderness in the lumbar spine, and tenderness, pain, and some swelling in the thoracic spine. *Id*. He diagnosed, *inter alia*, subluxation due to injury of C5, subluxation due to injury of the thoracic region, T1 to T 12, and subluxation due to injury of the lumbar region, L1 to L5. *Id*.

13.     During his initial visit to OSTS on December 6, 2007, the plaintiff reported pain from 2 to 4 on a scale of 1 to 10, describing (i) a constant irritation exacerbated when he turned his neck into a right side bend, (ii) a reproduction of rib pain with coughing, and (iii) attempts to avoid sitting for longer than 30 minutes due to secondary irritation. Plaintiff's Exh. 5 (Initial Evaluation by Lamoureux dated 12/6/07). He noted no change in neck symptoms since the day of the accident, but reported increased back pain since then. *Id*. Lamoureux noted that he presented with left cervical musculature strain, significant upper thoracic irritability, and joint and soft tissue restriction. *Id*.

14.     The plaintiff returned to the Naval Clinic on December 11, 2007, reporting pain of 3 on a scale of 1 to 10 in his mid-back and the left side of his neck. Plaintiff's Exh. 1 (note of Terry G. Gray dated 12/11/07). Gray updated the plaintiff's light-duty restrictions to include a ban on operation of heavy machinery. *Id*.

15.     The plaintiff was again seen at the Naval Clinic on December 18, 2007, at which time he reported that he was then in no pain and requested a return to full duty. Plaintiff's Exh. 1 (note of Abbott dated 12/18/07). Abbott recorded no abnormal findings on examination of the

plaintiff's cervical and thoracic spine. *Id.* He released the plaintiff without limitations, with follow-up as needed. *Id.*

16. From December 6, 2007, to January 24, 2008, the plaintiff had 13 treatments at OSTS. Plaintiff's Exh. 5 (progress note of Lamoureux dated 1/16/08; letter from Lamoureux to Abbott dated 2/15/08). Lamoureux noted that, as of January 24, 2008, the plaintiff reported no pain, was experiencing infrequent tingling when driving, and otherwise had no problems or functional limitations. *Id.* (letter from Lamoureux to Abbott dated 2/15/08). The plaintiff was discharged to an independent home exercise program. *Id.*

17. From December 4, 2007, to April 16, 2008, the plaintiff had 19 treatments with Dr. Newton. Plaintiff's Exh. 4 (notes of Dr. Newton dated 12/4/07 to 4/16/08). The plaintiff generally reported improvements with treatment, although on December 22, 2007, he reported that his lower back pain was worse since returning to full duty, with pain of 5 on a scale of 1 to 10. *Id.* (note of Dr. Newton dated 12/22/07). By April 16, 2008, he rated his pain overall as 1, with no neck pain, mid-back pain of 1, and lower back pain of 1. *Id.* (SOAP [Subjective, Objective, Assessment, and Plan] Notes – Detail of Dr. Newton dated 4/16/08). However, Dr. Newton noted tenderness and hypertonicity on palpation of the cervical and thoracic spine and tenderness in the lumbar spine. *Id.*

18. Prior to the accident, the plaintiff had suffered a 2001 sports injury to his tailbone and a twinge in his neck related to looking over his shoulder during snow removal duties. M. Rix Test. However, the pain that he experienced following the Accident was a new, distinct type of pain for him. *Id.*

19. Since the Accident, the plaintiff has experienced recurrences of a throbbing pain in his mid-back, exacerbated by prolonged standing or sitting, and a less frequent, but very sharp,

pain in his lower back.  *Id*.  He has tended to rely on the use of Ibuprofen and home physical therapy exercises to control his mid-back pain, but has tended to seek treatment when experiencing flare-ups of the lower back pain.  *Id*.  During intervals in which the plaintiff has not undergone physical therapy for his back pain, he has performed his home physical therapy exercises an average of two to three times weekly.  *Id*.

20.     The plaintiff has had an ongoing concern that his back injury would place him at risk of a medical discharge from military duty, which has caused him to be cautious in seeking medical treatment for flare-ups, particularly from the Naval Clinic.  *Id*.; D. Rix Test.  He knows of two cases in which individuals with back issues went before a medical evaluation board and were medically discharged from duty.  M. Rix Test.

21.     On December 9, 2008, the plaintiff returned to the Naval Clinic, complaining to Steven J. Keefe, D.O. of a recurrence of back pain commencing three to four weeks earlier. Plaintiff's Exh. 1 (note of Dr. Keefe dated 12/9/08).  Dr. Keefe noted: "Background Information: 47 y/o male involved in MVA [motor vehicle accident] 12/3/07 resulting in cervical, upper and mid back pain.  He was treated with motrin and flexeril, light duty, and physical therapy with gradual resolution till it started 3-4 weeks ago, now mid/lower, feels like deep ache lower Lt of the spine."  *Id*.  The plaintiff complained of bilateral muscle spasms, in addition to pain, in his lower back.  *Id*.  This was the plaintiff's first report to the Naval Clinic of low back pain.  On examination, Dr. Keefe found muscle spasms in the thoracic, or mid-back, region.  *Id*.  He prescribed Ibuprofen and ordered x-rays of the plaintiff's lumbar spine.  *Id*.  He released the plaintiff without limitations.  *Id*.

22.     The plaintiff returned to the Naval Clinic on December 30, 2008, reporting a 10 percent improvement in his symptoms.  *Id*. (note of Dr. Keefe dated 12/30/08).  Dr. Keefe noted

findings of tenderness, pain, and muscle spasms on palpation of the plaintiff's lumbar/lumbosacral spine. *Id.* X-rays revealed mild disc height loss with degenerative endplate changes at all lumbar levels and no evidence of fracture or subluxation. *Id.* Dr. Keefe diagnosed the plaintiff with lumbar intervertebral disc degeneration, prescribed Baclofen for back pain and spasm, and referred him to physical therapy. *Id.* He released him without limitations. *Id.*

23.     The plaintiff returned that day to OSTS. Plaintiff's Exh. 5 (Initial Evaluation of Stephen Sarro, P.T., O.M.T. dated 12/30/08). Physical therapist Stephen Sarro noted, on initial intake, that the plaintiff reported pain of between 5 and 8 on a scale of 1 to 10, was tender to palpation at L4 and L5, had limited trunk range of motion and hypermobile joints at L4 and L5, and pain with static postures after more than 30 minutes. *Id.* The plaintiff was discharged from physical therapy on February 13, 2009, after nine treatment sessions. *Id.* (Discharge Report of Sarro dated 2/13/09). As of his discharge date, the plaintiff reported that he was feeling good and pain-free with all activities. *Id.* His trunk range of motion was normal. *Id.* He was judged independent with a home exercise program. *Id.*

24.     The plaintiff next was seen by Dr. Keefe at the Naval Clinic on March 24, 2009. Plaintiff's Exh. 1 (note of Dr. Keefe dated 3/24/09). Dr. Keefe categorized the plaintiff's backache as among his chronic problems. *Id.* The plaintiff stated that he was better, although he still had muscle spasms in the lower back. *Id.* Dr. Keefe found that the plaintiff had normal posture and no pain behavior. *Id.* He instructed the plaintiff to follow up as needed and released him without limitations. *Id.*

25.     The plaintiff sought no additional treatment for his back until May 11, 2010, when he returned to Dr. Newton. Plaintiff's Exh. 4 (Intermediate Exam of Dr. Newton dated 5/11/10). The plaintiff complained to Dr. Newton of constant left lower back pain, described as

"a similar feeling he had after his car accident." *Id*. The pain was aching, dull, and radiating into his left hip and was accompanied by stiffness. *Id*. The plaintiff also complained of center upper back pain. *Id*. He reported pain of 5 on a scale of 1 to 10 in both his lower and upper back. *Id*. On examination, Dr. Newton found mild decreases in range of motion in the cervical and lumbar spine, increased muscle tone/spasms and tenderness of the lumbar spine, and tenderness and pain of the thoracic spine. *Id*.

26.     The plaintiff underwent 16 treatments with Dr. Newton during the period from May 11, 2010, through September 20, 2010. Plaintiff's Exh. 4 (notes of Dr. Newton dated 5/11/10 to 9/20/10). By July 6, 2010, he was reporting pain of 2 on a scale of 1 to 10 in both his lower and upper back. *Id*. (note of Dr. Newton dated 7/6/10). By September 20, 2010, the plaintiff was feeling better overall. *Id*. (note of Dr. Newton dated 9/20/10).

27.     Nonetheless, on October 1, 2010, the plaintiff presented to Dr. Keefe at the Naval Clinic complaining of pain of 4 on a scale of 1 to 10 in his lower and mid back and seeking "referral for persist[e]nt sx [symptoms]." Plaintiff's Exh. 1 (note of Dr. Keefe dated 10/1/10). Dr. Keefe referred him for consultations with physical and rehabilitation medicine and anesthesia/pain management and released him without limitations. *Id*.

28.     On October 25, 2010, the plaintiff was evaluated by Christopher Delorie, D.O., of York Pain Consultants. Plaintiff's Exh. 8 (note of Dr. Delorie dated 10/25/10). The plaintiff reported usual pain of 7 on a scale of 1 to 10 and moderate functional impairment, with the pain, when present, interfering with some daily activities. *Id*. The plaintiff described the overall severity of the pain as having changed since December 2007, with flare-ups now occurring every couple of months. *Id*. He stated that "[m]ost of his pain is midline low back some bilateral paralumbar spasm[,]" without radiating symptoms. *Id*. He also reported "vague spasm with

numbness type pain at the base of his neck." *Id*. On palpation, Dr. Delorie found mild to moderate tenderness and moderate pain in the plaintiff's lumbar spine. *Id*. He ordered MRI tests of the plaintiff's cervical and lumbar spine and prescribed a trial of a TENS [Transcutaneous Electrical Nerve Stimulation] unit, which was dispensed three days later. *Id*. (notes of Dr. Delorie dated 10/25/10, 10/28/10).

29. The plaintiff saw Dr. Delorie again on November 24, 2010, following MRI testing done on November 12, 2010. *Id*. (note of Dr. Delorie dated 11/24/10); Plaintiff's Exh. 6. The plaintiff reported that he was getting some moderate relief from the TENS unit, which helped his back more than his neck, and Dr. Delorie reviewed the MRI findings, which revealed multiple degenerative levels of the cervical spine with disc bulges but no frank herniation or other worrisome problems, and some mild stenosis, degenerative facet disease, and a small disc protrusion or disc bulge at L5-S1. *Id*. Dr. Delorie told the plaintiff that his back was very similar to those of other 49- to 50-year-old people, and that the MRI revealed no injury related to an accident or other trauma. M. Rix Test.

30. On November 9, 2010, the plaintiff was seen by Minh T. Tran, D.O., of Seacoast Area Physiatry, PC, on referral from Dr. Keefe for evaluation of the plaintiff's persistent back pain. Plaintiff's Exh. 7 (note of Dr. Tran dated 11/9/10); Videotaped Deposition of Minh T. Tran, D.O. ("Tran Dep."), Plaintiff's Exh. 14, at 5-6. Dr. Tran is board-certified in physical medicine rehabilitation. Tran Dep. at 4. Physiatrists are specialists in bones, muscles, and nerves, and Dr. Tran's particular specialty is spinal pain. *Id*. at 4-5.

31. Prior to the plaintiff's initial visit, Dr. Tran reviewed Dr. Keefe's office note of October 1, 2010. *Id*. at 7. During that visit, the plaintiff told Dr. Tran that he had no history of back pain and that the week following the Accident, he had increased pain that had persisted and

could be as severe as between 8 and 9 on a scale of 1 to 10. Plaintiff's Exh. 7 (note of Dr. Tran dated 11/9/10). The plaintiff described "a tingling sensation at the upper thoracic spine, which is midline, dull to sharp pain at the mid thoracic spine and intermittent sharp pain in the lower back" that was "also centralized" and was aggravated by prolonged sitting. *Id.* He denied any radiation of pain up into his cervical spine or into his extremities. *Id.* The described pain was centralized and did not radiate out into his arms or legs, indicating that it likely did not emanate from a disc herniation or nerve irritation. *Id.* at 9-10.

32.     On examination, Dr. Tran found full, pain-free range of motion of the spine and no strength deficits, but did note some tenderness and numbness to palpation at the mid-thoracic spine. Plaintiff's Exh. 7 (note of Dr. Tran dated 11/9/10). Her diagnosis was as follows: "50-year-old left-handed male suffered an MVA on 12/03/07 with intermittent but persistent thoracic and lumbar pain secondary to a sprain/strain. No clinical evidence of radiculopathy." *Id.* She referred the plaintiff to Frisbie Memorial Hospital Physical Therapy ("Frisbie") for craniosacral therapy and myofascial release. *Id.* This is a specialized type of physical therapy involving hands-on manipulation and aimed at balancing the ligaments if there is a sprain or balancing the muscles if there is a muscle spasm. Tran Dep. at 12.

33.     The plaintiff began treatment at Frisbie on December 8, 2010, and was discharged on March 10, 2011, following 15 physical therapy sessions. Plaintiff's Exh. 10 (Physical Therapy Discharge Summary of Lipe dated 3/10/11). "At the time of initial evaluation he presented with tight musculature of his full spine, chronic pain, altered quality of intervertebral joint mobility in cervical and thoracic spines, fair abdominal core strength, decreased functional mobility, intermittent difficulty performing occupational activities and difficulty performing recreational activities as well as alter[e]d sleep." *Id.*

34.     As of the time of the plaintiff's discharge from Frisbie on March 10, 2011, he demonstrated "very good resolution of his discomfort and normal range of motion in his full spine" as well as "normal intervertebral joint mobility throughout his full spine" and "normal muscular tissue integrity and mobility." *Id*. He had been "very compliant" with the performance of exercises on a daily basis and the use of his TENS unit, and all goals of the physical therapy treatment had been met. *Id*.

35.     The Frisbie physical therapy was more intense than prior rounds of physical therapy that the plaintiff had undergone. M. Rix Test. While the treatment could be painful, it afforded the plaintiff tremendous relief. *Id*. Lipe focused on the plaintiff's mid-back but also did intense stretching exercises for his lower back. *Id*. The plaintiff was discharged from physical therapy with instructions to resume his home exercise program and seek the services of a massage therapist or a manual therapist of some type for intervention as needed to help maintain his overall comfort level and the quality of his tissue and joint mobility. Plaintiff's Exh. 10 (Physical Therapy Discharge Summary of Lipe dated 3/10/11).

36.     During the course of his physical therapy with Lipe, the plaintiff saw Dr. Tran on two other occasions, on January 11, 2011, and February 15, 2011. Plaintiff's Exh. 7 (notes of Dr. Tran dated 1/11/11 and 2/15/11). On both of those occasions, the plaintiff continued to have a full range of pain-free motion of his cervical, thoracic, and lumbar spine. Tran Dep. at 22-23. As of January 11, 2011, Dr. Tran noted that the plaintiff's lumbar back pain had been resolved and that the plaintiff mainly felt a constant throbbing sensation in his left upper thoracic spine. Plaintiff's Exh. 7. (note of Dr. Tran dated 1/11/11). On palpation, Dr. Tran found tenderness with muscle spasm of the upper left trapezius and levator scapular muscles. *Id*. She administered a trigger point injection to that area. *Id*.

37.     As of February 15, 2011, Dr. Tran noted that the plaintiff reported no pain in his thoracic or lumbar spine, and that his spasm of the trapezius and scapula had resolved with the trigger point injection in that area.  *Id.* (note of Dr. Tran dated 2/15/11).  The plaintiff was to follow up as needed with Dr. Tran, complete his course of physical therapy at Frisbie, and transition to a home exercise program to diminish the likelihood of a flare-up.  *Id.*; Tran Dep. at 19.  Dr. Tran also wrote a letter of medical necessity for a special office chair.  *Id.*

38.     The plaintiff still feels periodic throbbing in his mid-back.  M. Rix Test.  This is the same left-sided throbbing mid-back pain that he has experienced since the Accident.  *Id.*  It is usually triggered by prolonged standing or sitting, for example, standing to do the dishes, standing in a formation at work, and driving long distances.  *Id.*  However, he feels that he has been given enough tools through various physical therapy sessions to manage the condition at home with exercises and the use of Ibuprofen.  *Id.*  He believes that he has come to the end of the road with physical therapy, and he does not want to have more aggressive treatment such as injections or surgery.  *Id.*

39.     From May 29, 1996, through February 15, 2005, the plaintiff received periodic chiropractic adjustments from Peter Gay, D.C., a chiropractor in Kennebunk, Maine.  Plaintiff's Exh. 11.  The plaintiff sought the treatments on the recommendation of his wife, who was a patient of Dr. Gay.  M. Rix Test.; D. Rix Test.  Dr. Gay provided chiropractic adjustments to the plaintiff's whole family, including the couple's three daughters, who were involved in sports.  *Id.*  The plaintiff viewed these treatments as a "preventive maintenance plan."  M. Rix Test.  The plaintiff did not recall complaining to Dr. Gay of specific problems apart from the sports injury to his tailbone in 2001.  *Id.*

40.     In an intake form dated May 4, 1996, the plaintiff reported that he had no presenting complaints.  Plaintiff's Exh. 11 (form dated 5/4/96).  Dr. Gay's notes indicate that he typically made adjustments throughout the plaintiff's spine, including in the cervical, thoracic, lumbar, and sacral regions.  *Id*.  Dr. Gay occasionally wrote brief comments, among them, (i) a notation on May 31, 1996, "↑ ROM [range of motion] in neck[,]" *id*. (chart of Dr. Gay covering visits from 5/29/96 to 11/7/96), (ii) a notation on August 30, 1996, "low back stiff & sore[,]" *id*., (iii) a notation on December 30, 1996, "pain between shoulders & low back[,]" *id*. (chart of Dr. Gay covering visits from 12/2/96 to 2/11/97), (iv) a notation on January 19, 1998, "neck stiffness + ↓ ROM lower c-spine (R)," *id*. (chart of Dr. Gay covering visits from 12/16/97 to 4/8/98), (v) a notation of the plaintiff's soccer injury on February 20, 2001, *id*. (chart of Dr. Gay covering visits from 3/27/00 to 3/9/01), and (vi) virtually illegible notes possibly indicating low back difficulties on September 16, 2003, and January 14, 2005, *id*. (chart of Dr. Gay covering visits from 7/20/01 to 2/15/05).  The frequency of the plaintiff's visits to Dr. Gay declined through the years.  *Id*.  He saw Dr. Gay only five times in 2001, once in 2002, once in 2003, once in 2004, and twice in 2005.  *Id*.

41.     Plaintiff's Exhibit 1 contains medical records relating to the plaintiff's military service dating back to 1978, when he was 17 years old.  Plaintiff's Exh. 1 (Preliminary Physical Review dated 3/22/78).  There is no report of back pain, back injury, or back treatment prior to the time of the Accident.  *Id.*

42.     Since the Accident, the plaintiff has continued as a squadron fitness monitor.  M. Rix Test.  With the exception of the period from December 4 through December 18, 2007, when he was placed on light duty, he has been on unrestricted duty at work.  *Id*.  His work requires him, at times, to carry a toolbox as heavy as 15 pounds, to do some overhead work, and to work

in underground fuel line pits. *Id.* He also works at a computer for two to three hours per day. *Id.* In winter, he operates snow-blowing equipment. *Id.* Since the Accident, these activities have sometimes caused back pain flare-ups. *Id.*

43. Since the Accident, the plaintiff has continued his recreational activities, including hiking, kayaking, and backpacking. *Id.* However, he has modified these activities by purchasing ultralight equipment to avoid putting excessive strain on his back, taking more frequent stretch breaks, and cutting back on kayaking, which he finds less comfortable and enjoyable than he did prior to the Accident. *Id.*

44. Since the Accident, the plaintiff has continued the performance of household chores such as lawn mowing, snow blowing, leaf raking, home repairs, cooking, laundry, cleaning, and dish washing. *Id.* However, his wife probably does more than she did in the past. *Id.* In addition, since the Accident, these activities have sometimes caused back pain flare-ups. *Id.*

45. Since the Accident, the plaintiff, who is afforded time at work for physical training, has continued a fitness routine that includes weight training and running, as well as continuing home physical therapy exercises prescribed by various treating sources. *Id.* Recently, he has been doing a lot of stretching exercises and taking yoga classes. *Id.* He does not like to take medications, but has been taking Ibuprofen about once a week to control back pain. *Id.*

46. The plaintiff is a hard-working, positive type of person who has seldom called in sick to work. D. Rix Test. The plaintiff, who does not customarily complain, has periodically complained about back pain to his wife. *Id.* Debra Rix has also observed her husband

stretching, changing his posture, and using his TENS machine or a foam roller to relieve back pain. *Id.*

47.     In Dr. Tran's opinion, it is more probable than not that the symptoms she observed are the same symptoms that the plaintiff experienced at the time of the Accident. Tran Dep. at 11-12.

48.     Dr. Tran has reviewed the plaintiff's November 12, 2010, MRI test results. *Id.* at 13. In her opinion, disc bulges such as those revealed in the plaintiff's MRI testing are part of a normal degenerative process of the spine and are not necessarily symptomatic. *Id.* at 13-14.

49.     On the day of her September 8, 2011, deposition, Dr. Tran reviewed, for the first time, copies of Dr. Gay's treatment notes. *Id.* at 21, 23. She testified that the reported pain from the soccer injury in 2001 was in the sacral area, below the spinal level for which the plaintiff sought treatment from her. *Id.* at 25-26. Dr. Tran agreed that Dr. Gay's notes possibly raised a question as to whether the plaintiff had some long-standing history of lower back pain, *id.* at 26, and pre-existing problems with his mid-thoracic and cervical areas, *id.* at 26-27.

50.     Dr. Tran testified that the fact that the plaintiff did not report lower back pain when he presented to the Portsmouth Regional Hospital emergency room following the Accident does not change her assessment of the causation of his back problems. *Id.* at 28-29. She stated that the plaintiff had previously informed her that, a week following the accident, he had increased pain in his upper thoracic area and intermittent lower back pain. *Id.* at 29.

51.     According to Dr. Tran, while pain from soft tissue injuries many times resolves within four to six weeks, such an injury can also lead to chronic pain syndrome because muscles can retain a "memory." *Id.* at 34. She believes that the plaintiff has such a syndrome, despite his ability to perform his work, home, and recreational activities. *Id.* at 34-35. Inconsistency with

his independent home exercise program or work or non-work physical activities can cause flare-ups or exacerbations of the plaintiff's pain. *Id*. at 36. The plaintiff's work activities could negatively affect every part of his back – neck, thoracic spine, and lumbar spine. *Id*. at 32.

52. The defendant's medical and chiropractic bills produced in discovery in the amount of $16,967 are authentic. Stipulations ¶ 2.

53. The plaintiff's medical and chiropractic bills subsequent to April 18, 2008, produced in discovery in the amount of $11,704 are related to diagnosis and/or treatment of varying parts of the plaintiff's back. *Id*. ¶ 4.

## II. Conclusions of Law

1. The defendant's negligence caused the Accident. Stipulations ¶ 1.

2. The plaintiff is entitled to recover sums that fairly, reasonably, and adequately compensate him for past and future medical expenses attributable to injuries incurred in the Accident. *See, e.g., Swiridowsky v. Kennebec Mental Health Ass'n*, No. CIV.A. CV-98-220, 2000 WL 33675676, at *4 (Me. Super. Ct. Sept. 5, 2000) (plaintiff injured by defendant's negligence entitled to recover, *inter alia*, "compensation for past and future medical expenses attributable to the injury"). A plaintiff bears the burden of establishing a causal relationship between his or her claimed medical expenses and injuries. *See, e.g., Blais v. Davis*, 358 A.2d 552, 555 (Me. 1976).

3. The plaintiff also is entitled to recover a sum that fairly, reasonably and adequately compensates him for emotional and physical pain and suffering and loss of enjoyment of life attributable to the plaintiff's negligence. *See, e.g., Goldstein v. Sklar*, 216 A.2d 298, 308 (Me. 1966) (plaintiff injured by defendant's negligence entitled to recover, *inter alia*, sum "that would fairly, reasonably and adequately compensate him for his pain and suffering,

past and future, mental and physical, as well as for his loss of health . . . proximately ascribable to his injury"); *Swiridowsky*, 2000 WL 33675676, at *4 (plaintiff injured by defendant's negligence entitled, *inter alia*, to "compensation . . . for her pain and suffering and loss of enjoyment of life").

4.      The plaintiff seeks to recover the sums of $16,967 in medical expenses, $80,000 as compensation for past pain and suffering, $50,000 as compensation for expected future pain and suffering, pre- and post-judgment interest, and costs.  *See* Plaintiff's Proposed Findings, Proposed Conclusions of Law, ¶¶ 2, 4-6.

5.      There is no dispute that the plaintiff's medical and chiropractic bills through April 18, 2008, produced in discovery in the amount of $5,263 are causally related to the Accident.  Stipulations ¶ 3.  The plaintiff also has proved by a preponderance of the evidence that his medical and chiropractic bills totaling $11,704 for the period subsequent to April 18, 2008, are causally related to the Accident.  Hence, he is entitled to recover the full requested $16,967 in medical expenses.[2]

6.      While the plaintiff suffered some neck and back pain or soreness prior to the Accident, as recorded in the notes of Dr. Gay, he credibly testified that the back pain that he experienced after the Accident was of a different kind and nature and that, when it has since recurred, it has been similar to the Accident-related back pain, consisting primarily of throbbing sensations in the mid-back and less frequent but more sharp pain in the lower back.  Notes of treatment for flare-ups of back pain from December 2008 through March 2011 tend to corroborate that the plaintiff complained of pain similar to that reported to and treated by Dr. Newton and the OSTS in the weeks following the Accident.

---

[2] The defendant proposed that the plaintiff be awarded medical expenses only for the period through April 18, 2008, disputing that he had established that subsequent medical expenses were causally related to the Accident.  *See* Defendant's Proposed Findings, Conclusions of Law, ¶¶ 3-4.

7.     In addition, Dr. Gay's notes of the plaintiff's increasingly infrequent chiropractic adjustments do not describe any presenting complaints or contain much detail about the type and quality of any pain and soreness noted on examination. It is noteworthy that there is no evidence that, prior to the Accident, the plaintiff sought treatment for back pain or any other back issue from any source other than Dr. Gay.

8.     While the plaintiff did not complain to any treating source at the Naval Clinic of low back pain until December 9, 2008, more than a year after the Accident, he did complain of low back pain to Dr. Newton on December 4, 2007, one day after the Accident. The plaintiff had reasons to minimize his reports of pain to the Naval Clinic, fearing potential medical discharge from active duty. The fact that the plaintiff did not immediately report lower back pain on the day of the Accident did not alter Dr. Tran's opinion that this pain was part of the constellation of symptoms emanating from the chronic pain syndrome triggered by the Accident.

9.     While Dr. Tran agreed that Dr. Gay's notes at least raised a question for her as to whether the plaintiff had some long-standing history of lower back pain and/or preexisting cervical and mid-thoracic back problems, she did not state that this caused her to disavow her opinion on causation. She also indicated that (i) the plaintiff's 2001 sports injury occurred at a spinal level lower than those involved in her treatment of the plaintiff, (ii) the degenerative changes noted in the plaintiff's MRI would not necessarily be symptomatic, and (iii) the centralization of pain in the plaintiff's back, without radiation into his limbs, indicated that his pain did not emanate from a herniated disc or irritated nerves but, rather, from soft-tissue injury.

10.     While the plaintiff's work, home, and leisure activities indeed exacerbate his back pain, the weight of the evidence is that these activities tend to cause flare-ups of the chronic pain syndrome that was caused by the Accident.

11.     The injuries suffered by the plaintiff in the Accident have caused an ongoing mild degree of chronic pain and suffering, with heightened pain and tenderness during flare-ups, particularly of his lower back.  The notes of his treating sources indicate that his Accident-related injuries have not diminished his strength and have only rarely, and mildly and temporarily, affected his range of motion.  The plaintiff has been able for sizable periods of time to control his pain and discomfort through home physical therapy exercises and the use of Ibuprofen, and testified at trial that he intends to attempt to manage his pain in the future through those means.  The injuries suffered by the plaintiff in the Accident also have caused some modest modifications in his activities of daily living and lifestyle, for example, a need for increased stretch breaks and home physical therapy exercises, the purchase of lighter outdoor gear to avoid strain on his back, and the diminishment of his enjoyment of and engagement in kayaking.  However, with these modifications, he has been able to engage in essentially the full range of home and leisure activities that he did prior to the Accident.  Taking all of these factors into account, I conclude that the sum of $30,000 fairly compensates the plaintiff for past pain and suffering.[3]

12.     The plaintiff has presented no evidence concerning the expected course or duration of his chronic pain syndrome, apart from his own testimony that he anticipates being able to control his symptoms in the future by the use of Ibuprofen and home physical therapy exercises and that he hopes to avoid more aggressive therapies such as injections and surgery.  In the circumstances, any award for future pain and suffering would be unduly speculative.  *See, e.g., Michaud v. Steckino*, 390 A.2d 524, 530 (Me. 1978) ("A mere possibility that future pain or suffering might be caused by an injury, or that some disability might result later therefrom is not

---

[3] The defendant proposed an award of $7,500 in damages for pain and suffering for the period from the time of the Accident through April 16, 2008.  *See* Defendant's Proposed Findings, Conclusions of Law, ¶ 7.  The defendant proposed no damages for future pain and suffering.  *See id.*

as such sufficient to warrant an assessment of damages therefor. Mere surmise or conjecture as the term 'possibility' usually connotes cannot be regarded as legal proof of an existing fact or of a future condition that will result. Expert witnesses can give their opinion respecting future consequences that are shown to be probable, from which it may be inferred that they are reasonably certain to follow.") (footnote omitted).

13. The plaintiff is entitled to pre-judgment interest. "In a diversity action, such as the present one, state law must be applied in determining whether and how much pre-judgment interest should be awarded." *Saint-Gobain Indus. Ceramics Inc. v. Wellons, Inc*., 246 F.3d 64, 69 n.1 (1st Cir. 2001) (citation and internal quotation marks omitted). The Law Court has "stated that the assessment of prejudgment interest serves two purposes in the ordinary civil context: first, it compensates an injured party for the inability to use money rightfully belonging to that party between the date suit is filed and the date judgment is entered; and second, it encourages the defendant to conclude a pretrial settlement of clearly meritorious suits." *Guiggey v. Great N. Paper, Inc*., 1997 ME 232, ¶ 7, 704 A.2d 375, 377 (citations and internal punctuation omitted). An award of prejudgment interest serves the first of these two purposes, and is appropriate, in this case.

14. With respect to civil actions such as this one, in Maine "prejudgment interest is allowed at the one-year United States Treasury bill rate plus 3%." 14 M.R.S.A. § 1602-B(3). The "one-year United States Treasury bill rate" is defined to mean "the weekly average one-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the last full week of the calendar year immediately prior to the year in which prejudgment interest begins to accrue." *Id.* § 1602-B(3)(A). "Prejudgment interest accrues from the time of notice of claim setting forth under oath the cause of action, served personally or by

registered or certified mail upon the defendant until the date on which an order of judgment is entered." *Id.* § 1602-B(5).

15. The defendant was served notice of the instant action on December 6, 2010. *See* Docket No. 4. The one-year United States Treasury bill rate for the last full week of 2009 (December 25, 2009) was 0.41 percent. Hence, the plaintiff is entitled to prejudgment interest running from December 6, 2010, to the date of judgment at the rate of 3.41 percent.

16. The plaintiff also is entitled to post-judgment interest at the rate set by 28 U.S.C. § 1961(a). *See Fratus v. Republic W. Ins. Co.*, 147 F.3d 25, 29-30 (1st Cir. 1998) (applying state law to pre-judgment interest in diversity case and federal law to post-judgment interest); *Uncle Henry's, Inc. v. Plaut Consulting, Inc.*, 382 F. Supp.2d 150, 154 (D. Me. 2005) ("[P]rejudgment interest ends, and postjudgment interest begins, on the date of the original judgment[.]").[4]

### III. Conclusion

For the foregoing reasons, judgment is hereby entered in favor of the plaintiff and against the defendant in the amount of $46,967, with pre-judgment interest running from December 6, 2010, to the date of judgment at the rate of 3.41 percent, and with post-judgment interest to accrue commencing on the date of judgment.

**SO ORDERED**.

Dated this 30th day of November, 2011.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[4] I do not here address the plaintiff's request for costs, the subject matter of which is covered by Local Rule 54.3.